IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANE W., In Her Individual Capacity, And In Her Capacity As The Personal Representative Of The Estates Of Her Relatives, James W. Julie W., And Jen W., et al., | : : : : : : | CIVIL ACTION |
| Plaintiffs, v. | : : : | NO. 18-0569 |
| MOSES W. THOMAS, | : : | |
| Defendant. | : | |

## MEMORANDUM

**Tucker, J.**                                                                             **December 14, 2018**

      Before the Court is Defendant's Motion to Dismiss for Failure to State a Claim ("Motion to Dismiss") (Doc. 17), and Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss (Doc. 21). Upon consideration of the foregoing, and as discussed in detail below, Defendant's Motion to Dismiss is DENIED.

## I.  RELEVANT FACTUAL AND PROCEDURAL HISTORY

      On February 12, 2018, Plaintiffs sued Defendant Moses Thomas for Thomas's alleged involvement in one of multiple mass killings of the first Liberian civil war. Plaintiffs allege that during the first Liberian civil war Defendant was a commander of the Armed Forces of Liberia and that on July 29, 1990, Defendant ordered his soldiers to kill approximately 600 unarmed civilians inside St. Peter's Lutheran Church in Monrovia—Liberia's capital city. Plaintiffs are relatives of a number of victims killed in the massacre and are themselves survivors of the massacre. As relatives of those allegedly killed by Defendant and his soldiers, and as survivors, Plaintiffs seek damages under two statutes: (1) the Torture Victim Protection Act, Pub. L. No.

102-256, 106 Stat. 73 (1992) (codified at 28 U.S.C. § 1350 note) ("TVPA"), and (2) the Alien Tort Statute, 28 U.S.C. § 1350 ("ATS").

Defendant filed a Motion to Dismiss Plaintiffs' Complaint, which is ripe for decision.

## II. MOTION TO DISMISS STANDARD

Under Federal Rule of Civil Procedure 8(c)(1), it is an affirmative defense to argue that a plaintiff's case is barred by a statute of limitations. *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 461–62 (D.N.J. 1999) (citing Fed. R. Civ. P. 8(c)). "The Third Circuit, however, has held that a Rule 12(b)(6) dismissal on statute of limitations grounds is warranted when 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'" *Id.* (quoting *Cito v. Bridgewater Twp. Police Dep't*, 892 F.2d 23, 25 (3d Cir. 1989)).

The fact that a motion to dismiss may be grounded in a statute of limitations defense does nothing to change the well-accepted rule that to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). A court must accept as true all factual allegations contained in a complaint and interpret them in the light most favorable to the plaintiff. *Argueta v. U.S. Immigration and Customs Enf't*, 643 F.3d 60, 74 (3d Cir. 2011). Ultimately, a court "may dismiss a complaint for failure to state a cause of action only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Gupta v. Albright Coll.*, 2006 WL 162977 at *2 (E.D. Pa. Jan. 19, 2006) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).

## III. DISCUSSION

Defendant advances three arguments in favor of the dismissal of Plaintiffs' Complaint. First, Defendant argues that Plaintiffs' claims under the TVPA must be dismissed because the events giving rise to Plaintiffs' cause of action—the Lutheran Church Massacre of 1990—occurred more than twenty-eight years ago, and eighteen years after the TVPA's ten-year limitations had expired. Second, Defendant argues that Plaintiffs' claims under the ATS likewise are barred by a ten-year limitations period. Third, Defendant argues that Plaintiffs' claims under the TVPA are barred because Plaintiffs have failed to exhaust their local Liberian remedies before seeking redress in the United States. The Court rejects each of these arguments in turn below.

After addressing each of Defendant's arguments, the Court also addresses an independent issue raised by Plaintiffs in their responsive brief—the Court's jurisdiction over Plaintiffs' admittedly extraterritorial ATS claims. The Court concludes, assuming all facts in the Complaint to be true, that the Court has jurisdiction over Plaintiffs' ATS claims because Plaintiffs' claims sufficiently "touch and concern" the United States.

**1. Plaintiffs have pled sufficient facts to support the application of equitable tolling; therefore, the ten-year TVPA statute of limitations does not bar Plaintiffs' claims.**

Under the TVPA, "[n]o action shall be maintained under this section unless it is commenced within 10 years after the cause of action arose." 28 U.S.C. § 1350, note, sec. 2(c). This limitations period would ordinarily bar a plaintiff from suing under the TVPA beyond ten years from the date of the events giving rise to the action. However, under certain extraordinary circumstances, the Third Circuit has recognized that notwithstanding a limitations period, the doctrine of "[e]quitable tolling stops the statute of limitations from running . . . " *Iwanowa v.*

*Ford Motor Co.*, 67 F. Supp. 2d 424, 467 (D.N.J. 1999) (citing *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994)).

Courts outside the Third Circuit have concluded that the equitable tolling doctrine may apply to TVPA claims under certain circumstances. The existence of an ongoing civil war or the existence of a hostile local government where the events giving rise to the claim are located, for example, can be grounds for equitable tolling of the TVPA limitations period. *See, e.g.*, *Arce v. Garcia*, 434 F.3d 1254, 1261 (11th Cir. 2006); *Chavez v. Carranza*, 407 F. Supp. 2d 925, 928 (W.D. Tenn. 2004). The existence of a justifiable fear of violent reprisal by potential defendants or defendants' allies can also toll the limitations period. *See, e.g.*, *Hilao v. Estate of Marcos*, 103 F.3d 767, 773 (9th Cir. 1994). The absence of a defendant "from the United States or from any jurisdiction in which the same or a similar action arising from the same facts may be maintained by the plaintiff" can toll the limitations period. *Jean v. Dorelian*, 431 F.3d 776, 780 (11th Cir. 2005) (citing S.Rep. No. 102–249, at 11 (1991)); *see also Hilao*, 103 F.3d at 773 (citing S.Rep. No. 102–249, at 11 (1991)) (stating that "[t]he Senate Report on the TVPA states that the ten-year statute is subject to equitable tolling, including for periods in which the defendant is absent from the jurisdiction or immune from lawsuits and for periods in which the plaintiff is imprisoned or incapacitated."). A defendant's concealment of his identity or his whereabouts may also toll the statute of limitations. *See, e.g.*, *Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1155 – 56 (11th Cir. 2005)) (providing that the political climate in Chile as well as the fact that human rights abuses were concealed made it "nearly impossible for [plaintiffs] to discover [defendants'] wrongs" and file suit within the limitations period).

In this case, Plaintiffs' Complaint is rife with allegations sufficient to establish, for pleading purposes, that the limitations period on Plaintiffs' TVPA claims should be tolled until

the date of filing of the Complaint, and at the very least until 2011. Plaintiffs were materially hampered in their efforts to litigate their claims by: (1) Liberia's two civil wars and its unstable government—which has consistently equivocated over the handling of allegations of war crimes; (2) Plaintiffs' justifiable fear of violent reprisal were they to speak out in Liberia about the Lutheran Church Massacre; (3) Defendant's absence from the United States, which has hampered the Plaintiffs' ability to investigate their claims; and (4) Defendant's alleged concealment of his identity and his involvement in the perpetration of war crimes and human rights abuses.

First, equitable tolling is justified given the perpetual violence and instability that racked Liberia from approximately 1989 through late 2005. The first Liberian civil war began in 1989 and did not end until 1997. Compl. ¶ 14. Even with the end of the first Liberian civil war, violence and political instability persisted over the next two years. Compl. ¶ 14. Then, in 1999, Liberia was again plunged into a second civil war. Compl. ¶ 15. The second civil war did not end until 2003 with the installation of a transitional government. Compl. ¶ 15. Still, just as there remained violence after the end of the first civil war, violence continued in parts of Liberia even after 2003. Compl. ¶ 46. It was not until the democratic election of Ellen Johnson Sirleaf in 2006 that Liberia's government regained some stability. Compl. ¶ 15. The two back-to-back civil wars, however, left Liberia's "civil and legal infrastructure, . . . transportation infrastructure, . . . technology, and []judiciary" devastated. Compl. ¶ 48.

Disagreements in the post-war Liberian government also created false hope for the victims of wartime offenses. For example, despite the Liberian government's creation of a Truth and Reconciliation Commission ("TRC") to provide recommendations for pursuing justice in the wake of the civil wars, in 2011, the Liberian Supreme Court eviscerated the TRC's authority to

5

provide meaningful access to justice for victims of war crimes. The Liberian Supreme Court held that the recommendations made by the TRC were non-binding on the Liberian government. Accordingly, any hope that victims of the Liberian civil wars had that the Liberian government might enact the TRC's recommendations ended in 2011. These facts support equitable tolling of the TVPA's limitations period to at least 2011.

Second, Plaintiffs' reasonable and persistent fear of violent reprisal justifies the application of equitable tolling. Plaintiffs have alleged that "[e]ven after the start of nominal peace in 2003 . . . . [w]itnesses who have come forward to testify against individual perpetrators, even perpetrators residing outside of Liberia, have been threatened as a result." Compl. ¶ 46. No prosecutions of wartime offenses have occurred since the end of the second Liberian civil war. Compl. ¶¶ 44–45. Indeed, "[a]s of the date of the filing of [Plaintiffs'] Complaint, several of the most renowned alleged perpetrators of war crimes and serious abuses still hold political office." Compl. ¶ 45. In view of the history of threats leveled against victim witnesses, the fact that alleged perpetrators of wartime human rights abuses remain ensconced in the Liberian government, and the fact that the Liberian government has taken no action against any accused wartime offenders, Plaintiffs' fear of retaliation is justified and substantial. Plaintiffs' reasonable fear of violent reprisal supports equitable tolling of the TVPA limitations period up to the filing date of the Complaint.

Third, from at least the time of the Lutheran Church Massacre in 1990 to 2000, Defendant was absent from the United States and, therefore, could not have been held liable for his alleged offenses by a court in the United States. Compl. ¶ 51. Further, while Defendant resided in Liberia, between 1990 and 2000, Liberia was engaged in its second civil war. Accordingly, Plaintiffs were unable to investigate their claims in Liberia without the benefit of,

among other things, a working government, a working judiciary, or other basic forms of infrastructure. Defendants absence from the United States, therefore, further supports equitable tolling until at least 2000 when he emigrated to the United States.

Fourth, Defendant's alleged concealment of his identity and concealment of his involvement in the Lutheran Church Massacre and other wartime offenses also supports equitable tolling. Plaintiffs allege that "Thomas sought to remain in the United States under an immigration policy intended to assist victims of the conflict, including victims of the atrocities committed by Thomas . . . " Compl. ¶ 51. Defendant's misrepresentations and concealment of his identity to garner immigration and visa benefits, thus, hampered Plaintiffs' attempts to investigate their claims. This, too, supports equitable tolling.

In short, the Court concludes that the pleadings contained in Plaintiffs' Complaint are sufficient to justify application of equitable tolling to Plaintiffs' TVPA claims.

2. **Plaintiffs have pled sufficient facts to support the application of equitable tolling; therefore, the ten-year ATS statute of limitations does not bar Plaintiffs' action.**

Having concluded that Plaintiffs have alleged sufficient facts in the Complaint to apply equitable tolling to Plaintiffs' claims under the TVPA, the Court similarly concludes that Plaintiffs have alleged sufficient facts in the Complaint to apply equitable tolling to Plaintiffs' claims under the ATS.

While the ATS does not contain an explicit limitations period, courts have consistently concluded that the TVPA provides the "closest analogy under federal law" to the ATS and, therefore, the TVPA's ten-year statute of limitations should apply to claims under the ATS. *Iwanowa*, 67 F. Supp. 2d at 463; *see also Chavez,* 559 F.3d at 493 (applying TVPA's ten-year limitations period to a claim under the ATS); *Arce*, 434 F.3d at 1261 (holding same); *Hilao*, 103

F.3d at 773 (holding same).  As the TVPA represents the closest analogy to the ATS, those cases in which courts have concluded that equitable tolling applies to claims under the TVPA are persuasive on the issue of whether equitable tolling should apply to claims brought under the ATS.  *See* Section III.1, *supra* for a discussion of cases involving the equitable tolling of the TVPA limitations period.

In this case, the Court concludes that equitable tolling of Plaintiffs' ATS claims is warranted because Plaintiffs were hampered in their efforts to litigate their claims by: (1) Liberia's two civil wars and its unstable government—which has equivocated over the handling of alleged war crimes; (2) Plaintiffs' justifiable fear of violent reprisal were they to speak out in Liberia about the Lutheran Church Massacre; (3) Defendant's absence from the United States, which has hampered Plaintiffs' ability to investigate their claims; and (4) Defendant's alleged concealment of his identity and his involvement in the perpetration of war crimes and human rights abuses.  *See* Section III.1, *supra* for citations to the allegations in the Complaint supporting each of these four reasons.

> **3.     Plaintiffs have pled sufficient facts to support the conclusion that Plaintiffs have exhausted their local remedies because their local remedies are "unobtainable, ineffective, inadequate and obviously futile."**

Under the TVPA, "[a] court shall decline to hear a claim under [the TVPA] if the claimant has not exhausted adequate and available remedies in the place in which the conduct giving rise to the claim occurred."  28 U.S.C. § 1350, note, sec.2(c).  Where local remedies are not "adequate" or "available" then a TVPA claimant need not first attempt to exhaust such remedies before suing.  The Seventh Circuit has held that TVPA claimants need not exhaust their local remedies where "the legal remedies offered by the [local] courts were [] ineffective, unobtainable, unduly prolonged, inadequate or obviously futile."  *Enahoro v.* Abubakar, 408

8

F.3d 877, 892 (7th Cir. 2005). Other courts have likewise acknowledged that plaintiffs need not meet the exhaustion requirement under certain circumstances. For example, plaintiffs need not exhaust their local remedies if the plaintiffs would suffer retaliation for bringing their claims locally. *See, e.g.*, *Doe v. Exxon Mobil Corp.*, 393 F. Supp. 2d 20, 25 (D.D.C. 2005). That a locality has no functioning judiciary may also constitute grounds for excusing plaintiffs from the TVPA exhaustion requirement. *See, e.g.*, *Enaharo*, 408 F.3d at 891–92.

Before turning to the facts of this case, the Court notes that there are conflicting views on whether failure by a plaintiff to exhaust his local remedies before pursuing a claim under the TVPA constitutes an affirmative defense—to be proven by a defendant—or whether exhaustion must, instead, be alleged by a plaintiff as part of the plaintiff's complaint. *Compare Jean v. Dorelien*, 431 F.3d 776, 781 (11th Cir. 2005) (concluding that the TVPA's "exhaustion requirement is an affirmative defense") *and Doe v. Constant*, 354 F. App'x 543 (2d Cir. 2009) (holding same) *with Enaharo*, 408 F.3d at 892 (concluding that exhaustion must be pled by a plaintiff as part of the plaintiff's complaint). Despite the disagreement over where the burden rests in proving or disproving exhaustion, the Court need not reach this issue because Plaintiffs, in this case, have alleged facts in the Complaint to support the conclusion that the local remedies in Liberia are "unobtainable, ineffective, inadequate and obviously futile." *Enahoro*, 408 F.3d at 892.

Here, Plaintiffs have alleged that local remedies are patently futile and that futility is apparent from: (1) the fact that Liberia has never prosecuted a single war crime arising from the civil wars, Compl. ¶ 44; (2) the fact that Plaintiffs live under a persistent threat of retaliation and would likely face retaliation if they were to seek redress in Liberia, Compl. ¶¶ 43, 44, 46; and (3) the fact that the Liberian judiciary appears unable or unwilling to provide an adequate forum for

the pursuit of claims rooted in the civil wars, Compl. ¶¶ 15, 41.  Accordingly, in view of Plaintiffs' pleadings regarding the futility of pursuing their claims in Liberia, the Court concludes that Plaintiffs need not exhaust their local remedies before suing in this Court for their claims under the TVPA.

> **4. Plaintiffs have pled enough facts to show that the matters involved in this case sufficiently "touch and concern" the United States to rebut the general presumption against the Court's jurisdiction over extraterritorial claims.**

Although Defendant did not independently raise the issue of the Court's jurisdiction over Plaintiffs' admittedly extraterritorial ATS claims, the Court will still address this issue because it was raised by Plaintiffs in their Memorandum of Law.  The Court concludes that Plaintiffs' claims meet the Supreme Court's "touch and concern" test, first articulated in *Kiobel v. Royal Dutch Petrol. Co.*, and, therefore, the Court has jurisdiction over Paintiffs' ATS claims.  569 U.S. 108, 124–25 (2013).

The ATS provides that "district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States."  18 U.S.C. § 1350.  The Supreme Court, in *Kiobel*, held that the general presumption against federal district courts' jurisdiction over claims arising from extraterritorial conduct applies in the context of ATS claims.  569 U.S. at 117.  The Supreme Court further held that for federal courts to maintain jurisdiction over ATS claims, such claims must "touch and concern the territory of the United States" and "must do so with sufficient force to displace the presumption against extraterritorial application."  *Id.* at 125.

Whether an ATS claim sufficiently touches and concerns the United States is fact dependent.  Courts deciding this issue have looked to, among other things, whether the ATS claims involve territory—while foreign—controlled by the United States.  *See, e.g.*, *Al Shimari v.*

10

*CACI Premier Technology, Inc.*, 758 F.3d 516 (4th Cir. 2014) (suggesting that the extent of U.S. government control over foreign territory was an important consideration for purposes of ATS jurisdiction). Courts have also looked to whether the defendant in a case is a United States citizen. *Id*. Even before *Kiobel*, courts frequently held that a defendant's residence in the United States would suffice to confer jurisdiction over an extraterritorial ATS claim. *See, e.g.*, *Filartiga v. Pena-Irala*, 630 F.2d 876 (2d Cir. 1980); *In re Estate of Marcos, Human Rights Litig.*, 25 F.3d 1467 (9th Cir. 1994). Other courts engaging in the touch and concern jurisdictional analysis have focused on the nature and extent of a defendant's contacts with the United States and whether such contacts implicate the underlying facts on which a plaintiff's ATS claims are based. *See, e.g.*, *Licci v. Lebanese Canadian Bank, SAL*, 834 F.3d 201, 215–17 (2d Cir. 2016).

Here, the Court concludes that Plaintiffs' ATS claims touch and concern the United States with sufficient force to displace the general presumption against jurisdiction over extraterritorial claims. This is in view of Defendant's alleged involvement in the violent raid of a USAID compound under the control of a United States agency, Compl. ¶ 39; Defendant's residence in the United States, Compl. ¶ 8; and Defendant's allegedly fraudulent participation in a U.S. visa and immigration program designed to benefit the victims of the crimes that Defendant himself allegedly perpetrated. Compl. ¶ 51. Based on these pleadings, the Court concludes that jurisdiction over Plaintiffs' ATS claims are proper under the *Kiobel* standard.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is DENIED and Defendant shall file an Answer to Plaintiffs' Complaint. An appropriate order follows.